# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | NO. 3:11-cr-84 |
| KENNETH KRAEGER | (JUDGE CAPUTO) |

## MEMORANDUM

Currently before the Court is one pre-trial motion by Defendant/Petitioner Kenneth Kraeger. Kraeger has been charged with two counts of the Drug Act, 21 U.S.C. § 841(a)(1), for marijuana plants discovered at his home during the execution of two (2) search warrants on separate occasions. Kraeger moves to suppress evidence found during the November 4, 2010 search of his residence. Because the search warrant for the November 4, 2010 search was supported by probable cause, the motion will be denied.

## BACKGROUND

Kraeger's motion is the result of a drug charge stemming from the November 4, 2010 search of his residence located at 162 Hiller Road in Greeley, Pennsylvania. On October 24, 2010, Kraeger was stopped for speeding in North Hampton, New Hampshire by New Hampshire State Police Trooper Tamara Hester. Kraeger, who at the time was on bail awaiting state drug charges stemming from a May 28, 2009 search of his residence, was driving a vehicle belonging to his son, Daniel Kraeger, who was in the front passenger seat. As a result of this stop, Trooper Hester obtained and executed a search warrant for the vehicle on October 25, 2010. This search uncovered marijuana, a PPL Electric Utilities bill in Kraeger's name for his Greeley residence (among other documents), and an Apple

smartphone. A subsequent search, conducted pursuant to a search warrant, obtained additional information from the smartphone. These findings by the New Hampshire State Police were then transmitted to local authorities in Pennsylvania who used the information to obtain administrative subpoenas for the United Parcel Service and PPL Electric Utilities. All of these findings then contributed to a search warrant for Kraeger's residence, executed on November 4, 2010. During that search, officers allegedly uncovered more than two hundred (200) marijuana plants and various pieces of indoor growing equipment.

On March 15, 2011, Kraeger was indicted by a federal grand jury and charged with two counts of violating 21 U.S.C. §§ 841(a)(1) for marijuana seized from his residence on the two separate occasions. (Indictment, Doc. 21.) Count One, pursuant to 21 U.S.C. § 841(b)(1)(A)(vii) ("1,000 or more marijuana plants regardless of weight") was founded on the search of his residence conducted on May 28, 2009. Count Two, pursuant to 21 U.S.C. § 841(b)(1)(B)(vii) ("100 or more marijuana plants regardless of weight"), was founded on the November 4, 2010 search. On March 23, 2011, Kraeger plead not guilty to the charges before United States Magistrate Judge Thomas M. Blewitt.

On November 21, 2011, Kraeger filed four pre-trial motions, which included: (1) a motion to suppress evidence found during the May 28, 2009 search of his residence; (2) a motion to suppress evidence found during the November 4, 2010 search of his residence; (3) a motion to suppress evidence destroyed by the government; and (4) a motion to sever counts one and two for trial. On March 19, 2012, this Court denied Kraeger's motions to suppress evidence found during the May 28, 2009 search of his residence, suppress evidence destroyed by the government, and sever counts one and two for trial. However, this Court held Kraeger's motion to suppress evidence found during the November 4, 2010

2

search in abeyance until a hearing could be held to determine whether probable cause existed for the relevant search warrant. The hearing was held on August 23, 2012. The motion will be considered below.

**I. Motion to Suppress Evidence Found During the November 4, 2010 Search (Doc. 56)**

Kraeger argues that the warrant authorizing the November 4, 2010 search of his residence improperly relied on information unlawfully gathered during the New Hampshire traffic stop. Specifically, he claims that in reciting the affidavit for the warrant authorizing the November 4, 2010 search, Drug Enforcement Administration Task Officer ("TFO") Sciarillo unreasonably relied upon and recklessly omitted facts pertaining to the events in New Hampshire communicated to him by Trooper Cawley of the Pennsylvania State Police.

While there is a general presumption that an affidavit of probable cause is valid, following the issuance of an *ex parte* warrant, criminal defendants have the right to challenge the truthfulness of the factual statements contained within the affidavit. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). As a preliminary matter, before any hearing is held on the issue, there must be "a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). In regard to such reckless disregard for the truth, the Third Circuit has noted:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Id.* at 383 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). Yet, even if such

3

false statements are uncovered, a court will then "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000); *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) ("a defendant must show . . . that there would have been no probable cause but for the incorrect statement."). If probable cause is then found lacking, a probable cause hearing will be held.

Kraeger contends that TFO Sciarillo's sworn assertions before Magistrate Judge Blewitt on November 1, 2010 were made with reckless disregard for the truth as he had obvious reasons to doubt the truth of what he was declaring. This alleged doubt stems from a communication made by Pennsylvania State Trooper Cawley to the DEA Task Force in Pennsylvania on October 26, 2010, which contained the following statement:

> INFORMATION THAT SHOULD NOT YET BE KNOWN BUT WILL BE OBTAINED AFTER TROOPER HESTER EXECUTES THE SEARCH WARRANT ON KRAEGER'S CELL PHONE:

(Pet'r's Br. at 8, Doc. 59.) Kraeger argues that this "statement casts doubt on the procedures used by the state police in New Hampshire" and therefore that "TFO Sciarillo's reliance on the statements made by the state police in New Hampshire was not reasonable." (Pet'r's Mot. at ¶¶ 26-27, Doc. 56.) Specifically, Kraeger believes that the statement—which TFO Sciarillo testified to learning of on October 27, 2010, days before he swore his affidavit on November 1, 2010—suggests that the New Hampshire State Police had engaged in unlawful search practices, and believes that TFO Sciarillo did not have knowledge as to the actual existence of the New Hampshire warrants at the time of his affidavit. (*Id.* at ¶ 32.)

TFO Sciarillo did not have obvious reasons to doubt the procedures of the New Hampshire State Police. On October 25, 2010, Trooper Hester obtained a warrant to search

4

the vehicle driven by Kraeger and any cellular phone in the vehicle. (Oct. 25, 2010 Warrant at 3, ECF No. 74-1.) The warrant specifically requested the authority "to examine the telephones and record any of the data such as names, messages and/or telephone numbers" that were stored on the phones. (*Id.* at ¶ 9.) Relying on the fruits of that search, Trooper Hester requested a warrant to search the smartphone further. (Oct. 27, 2010 Warrant, ECF No. 74-2.) She explained in her affidavit that while "the original warrant authorized the search and seizure of records and digital and electronic media, it did not include the copying of media it contained on the electronic devices" and that the cursory review of the data on the smartphone necessitated a "forensic examination and copying of the voluminous data." (*Id.* at ¶ 12.) Trooper Hester received the second warrant on October 27, 2010 and, pursuant to that warrant, searched the smartphone that same day. (*Id.* at 3, 11.) That search included the copying of data from the phone, including e-mails, logs of incoming and outgoing calls, and text messages. (*Id.* at 11.) In its opinion discussing Kraeger's prior pre-trial motions, this Court found that both warrants obtained and executed by Trooper Hester were supported by probable cause. (Mem. 19, 21, Mar. 19, 2012, ECF No. 75.)

TFO Sciarillo testified at the hearing that he spoke with Trooper Hester after the initial search of the car and smartphone on October 25, 2010 as well as after the second search of the smartphone on October 27, 2010. The statement communicated to TFO Sciarillo by Trooper Cawley on October 26, 2010, stating that certain information had been viewed on the phone and would be obtained pursuant to a subsequent search, fits squarely into this order of events. Moreover, TFO Sciarillo testified at the hearing that he did not learn of Cawley's October 26, 2010 statement until the October 27, 2010. More important, and in

5

any event, it did not give TFO Sciarillo obvious reasons to doubt the New Hampshire State Police's procedures in searching the smartphone. I cannot conclude that TFO Sciarillo made assertions in his affidavit with reckless disregard for the truth.

Kraeger also argues that the statement was omitted from TFO Sciarillo's affidavit in support of the warrant authorizing the November 4, 2010 search, "result[ing] in the Magistrate [Judge] treating the statements from the New Hampshire state police with more credence and reliability than their statements were entitled to be given." (Pet'r's Mot. at ¶ 29, Doc. 56.) The exclusion of this statement from TFO Sciarillo's affidavit, however, was not reckless as to facts that a reasonable person would want to know. The second search of the smartphone, conducted pursuant to a search warrant on October 27, 2010, revealed the information alluded to in the October 26, 2010 communication from Trooper Cawley to TFO Sciarillo. Again, it is not clear that a reasonable person would be interested in a preliminary communication regarding what a search would unearth if the search actually revealed that information. Because TFO Sciarillo did not recklessly omit facts that any reasonable person would want to know, he did not make an omission with reckless disregard for the truth.

As Kraeger has not shown that TFO Sciarillo asserted or omitted facts from the affidavit with reckless disregard for the truth, the warrant authorizing the November 4, 2010 search of Kraeger's residence is supported by probable cause and legally sufficient. Therefore, his motion to suppress the evidence from the November 4, 2010 search of his residence will be denied. However, even if TFO Sciarillo asserted or omitted facts with reckless disregard for the truth in his affidavit, the removal of the allegedly inaccurate information or the insertion of the alleged recklessly omitted facts would not alter the

probable cause determination concerning the November 4, 2010 search warrant.

In his affidavit in support of the warrant authorizing the search, offered by the United States at the hearing, TFO Sciarillo references numerous factors independent of the smartphone data that establish probable cause. Thus, even absent the smartphone data, there was probable cause for the warrant. He notes that the warranted search for the vehicle conducted by Trooper Hester revealed, *inter alia*, $4,300 in United States currency which a Police K-9 trained in the detection of narcotics reacted to (indicating that the money had been adjacent to or mixed with narcotics) and a PPL Electric Utilities Bill in Kraeger's name for his residence in the amount of $1,172.05. The bill prompted TFO Sciarillo to send an administrative subpoena to PPL, which gave him records of Kraeger's electricity usage for the prior six months. A PPL representative stated that the amount of electricity used at Kraeger's residence far exceeded normal usage, which, TFO Sciarillo testified at the hearing to be consistent with a marijuana growing operation. The usage records also showed evidence of twelve (12) hour usage "spikes," which TFO Sciarillo affirmed was consistent with the lighting cycle used in the indoor cultivation of marijuana. His affidavit further notes that Trooper Hester arrested Kraeger on October 24, 2010 for possession of marijuana after stopping Kraeger for the speeding violation. TFO Sciarillo also affirmed that a check of Kraeger's criminal history revealed prior drug convictions as well as the pending state drug charges stemming from the 2009 search of Kraeger's residence. These factors alone, when viewed in light of TFO Sciarillo's training and experience, support a determination that the warrant authorizing the November 4, 2010 search was supported by probable cause.

## **CONCLUSION**

As the warrant authorizing the November 4, 2010 search is supported by probable

cause, Kraeger's motion to suppress the evidence derived from this search will be denied.

An appropriate order follows.


| August 29, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

v.

KENNETH KRAEGER

NO. 3:11-cr-84

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this _____ day of August, 2012, **IT IS HEREBY ORDERED THAT:**

(1) Defendant Kraeger's Motion to Suppress Evidence During the November 4, 2010 Search of 162 Hiller Drive, Greeley, PA (Doc. 56) is **DENIED**.

                                             _____
                                             A. Richard Caputo
                                             United States District Judge